**O**
**JS-6**

# United States District Court
# Central District of California

PAUL LIM et al.,

Plaintiffs,

v.

FARMERS GROUP, INC. et al.,

Defendants.

Case № 2:23-cv-03419-ODW (SKx)

**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND [24] AND DENYING DEFENDANTS' MOTION TO DISMISS AS MOOT [41]**

## I.     INTRODUCTION

Plaintiffs Paul Lim, Daniel Salabaj, Lorina Nuessle, Anthony Meyer, and David Bolton (collectively, "Plaintiffs") bring this action against Defendants Farmers Group, Inc., Fire Underwriters Association, and Truck Underwriters Association (collectively, "Defendants") for breach of fiduciary duties.  (Notice of Removal Ex. A ("Compl."), ECF No. 1-1.)  Plaintiffs move to remand the case to Los Angeles County Superior Court, (Mot. Remand ("MTR"), ECF No. 24), and Defendants move to dismiss the action under Federal Rule of Civil Procedure ("Rule") 12(b)(6), (Mot. Dismiss ("MTD"), ECF No. 41).  For the following reasons, the Court **GRANTS** Plaintiffs' Motion to Remand and **DENIES AS MOOT** Defendants' Motion to Dismiss.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.      BACKGROUND

The Court considers the facts as pleaded in both Plaintiffs' initial Complaint, ("Compl."), and First Amended Complaint, (First Am. Compl. ("FAC"), ECF No. 38).[2]

A reciprocal insurance exchange is an insurance association formed by a collection of owners, called subscribers, who agree by contract to insure one another. (Compl. ¶ 50.)   California law treats the reciprocal insurance exchange as an unincorporated association, to which the subscriber pays premiums in exchange for a policy of insurance.  (*Id.* ¶ 51 (*citing* Cal. Ins. Code § 1303).)  A reciprocal exchange thereby operates differently than a conventional insurance company, as the subscriber is both the owner and the insured policyholder.  (*Id.* ¶ 3.)

As an owner, a subscriber has a property interest in the exchange.  (*Id.* ¶ 3 ("The interest of a member in an unincorporated association is personal property." (*quoting* Cal. Corp. Code § 18100)).)   Accordingly, if "an exchange's excess premiums or surpluses is greater than needed, it can return funds collected to the owners, the subscribers, thus effectively reducing the subscribers' cost of insurance." (*Id.* ¶ 4 (*citing* Cal. Ins. Code § 1420).)

---

[2] Generally, jurisdiction is to be evaluated at the time of removal.  *Doyle v. OneWest Bank*, 764 F.3d 1097, 1098 (9th Cir. 2014).  Further, Plaintiffs cannot "amend away" CAFA jurisdiction after the case has been removed, thereby rendering CAFA jurisdiction secure even if, after removal, plaintiffs amend their complaint in an attempt to eliminate jurisdiction.  *See, e.g.*, *Herd v. Smart & Final Stores LLC*, No. 20-cv-8873-MWF (SKx), 2020 WL 6940699, at *3 (C.D. Cal. Nov. 25, 2020).  Yet, "[w]here a defendant removes a case to federal court under CAFA, and the plaintiffs amend the complaint to explain the nature of the action for purposes of our jurisdictional analysis, we may consider the amended complaint to determine whether remand to the state court is appropriate." *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1117 (9th Cir. 2015) (holding that an amended pleading is permitted where plaintiff did not amend to "avoid" federal jurisdiction, but rather to "elaborate" on facts "directly related" to the local controversy exception).  Accordingly, the Court considers Plaintiffs' FAC insofar that it helps clarify the facts relevant to the Court's jurisdictional analysis.  The facts included in this Section are true in both the initial Complaint and the FAC, unless otherwise noted.  For ease and clarity, the Court will primarily cite the facts in this Section to Plaintiffs' initial Complaint and supplement additional facts from the FAC where necessary.

To operate and manage their exchanges, subscribers must appoint an "attorney-in-fact" to operate as an agent "to administer the exchange and to carry out the insurance transactions." (*Id.* ¶¶ 52–53); *see also* Cal. Ins. Code § 1305 ("[C]ontracts may be executed by an attorney-in-fact, agent or other representative duly authorized and acting for such subscribers under powers of attorney."); *Fogel v. Farmers Grp., Inc.*, 160 Cal. App. 4th 1403, 1407 (2008) ("The interinsurance exchange is managed by the attorney-in-fact, which may be a corporation."). Attorneys-in-fact act as trustees and owe a fiduciary duty to subscribers. (*Id.* ¶ 8); *see also Fogel*, 160 Cal. App. 4th at 1407 ("The attorney-in-fact's relationship with each subscriber is that of a fiduciary."); *Indus. Indem. Co. v. Golden State Co.*, 117 Cal. App. 2d 519, 533 (1953) ("The position of the attorney-in-fact of a reciprocal insurance exchange . . . is fiduciary in character."). The attorney-in-fact's fiduciary duties include the duty "of loyalty to the interests of [each exchange's subscribers]," which is "the same as those of a trustee to his beneficiaries." (Compl. ¶ 68 (citations and internal quotation marks omitted).)

Here, Plaintiffs are subscribers of one of three reciprocal insurance exchanges: Farmers Insurance Exchange, Fire Insurance Exchange, and Truck Insurance Exchange (collectively, "Exchanges"). (*Id.* ¶ 6.) Through a standardized subscription agreement, Plaintiffs appointed each Defendant to serve as an attorney-in-fact to manage one of the three Exchanges. (*Id.* ¶ 7.) Specifically, Plaintiffs appointed Defendant Farmers Group, Inc. ("FGI") to serve as the attorney-in-fact for Farmers Insurance Exchange, Defendant Fire Underwriters Association ("FUA") to serve as the attorney-in-fact for Fire Insurance Exchange, and Defendant Truck Underwriters Association ("TUA") to serve as the attorney-in-fact for Truck Insurance Exchange. (*Id.* ¶ 6.) FUA and TUA are wholly owned subsidiaries of FGI. (*Id.* ¶ 37.) According to the Subscription Agreement Notice effectuated between the parties, subscribers grant Defendants "power to . . . effect reinsurance and all other acts incidental to the management of the Exchanges and the business of interinsurance." (Compl. Ex. A.)

Plaintiffs allege that FGI was responsible for developing and implementing the form subscription agreement, including the power-of-attorney clause.  (*Id.*  ¶ 60.) Defendants require each subscriber to execute the standardized power of attorney, as is, without the ability to change or negotiate any term of the power-of-attorney clause. (*Id.* ¶¶ 61–62.)

Pursuant to the subscription agreements, FGI and TUA each "shall be paid" 20% of the premiums subscribers pays, plus their membership fees, and FUA "shall be paid" 25% of the premiums subscribers pay, plus their membership fees.  (*Id.* ¶ 66; Decl. Margaret Giles ISO Opp'n MTR ("Giles Decl.") ¶ 4, ECF No. 29-1.)   In exchange for these agreed-upon fees, Defendants manage the Exchanges, providing "administrative and other non-claims-related services."  (Giles Decl. ¶ 5.)   These services include,

> selecting risks, setting prices, preparing and mailing policy forms and invoices, collecting premiums, marketing, reinsurance-related activities, the preparation of regulatory filings and regulatory approval, regulatory and industry relations and services, agent contract administration, calculation and payment of agents' commissions, insurance product design, investment services, tax administration, data processing services, accounting and banking, mergers and acquisitions, process engineering, compliance, and non-claims legal services, as overseen by the Exchanges' Boards of Governors.

(*Id.*)  "Attorneys-in-fact FGI, TUA, and FUA work . . . on behalf of the Exchanges." (*Id.* ¶ 7.)

Plaintiffs further allege that Defendants are unable to collect the agreed-upon rates described above, because doing so would "bankrupt the Exchanges."  (Compl. ¶ 67.)  Defendants "siphon[] nearly all of the excess premium out of the subscribers' Exchanges," leaving little to no surplus eligible to be redistributed to the subscribers. (*Id.* ¶ 15.)

On April 6, 2023, Plaintiffs filed this action in the Superior Court for the State of California for the County of Los Angeles, seeking to represent "[a]ll persons who

are or were subscribers in the [Exchanges]."  (Notice of Removal ("NOR"), ECF No. 1; Compl. ¶ 149.)  Plaintiffs bring one cause of action for breach of fiduciary duty.  (Compl. ¶¶ 158–66; FAC ¶¶ 183–93.)

On May 5, 2023, Defendants removed the action on the basis that this Court has jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  (NOR ¶¶ 1–4.)  Plaintiffs have filed a Motion to Remand, arguing that federal jurisdiction is carved out by 28 U.S.C. § 1332(d)(9)(B), and Defendants have filed a Motion to Dismiss under Rule 12(b)(6).

### III.       PLAINTIFFS' MOTION TO REMAND

Both parties agree that this case satisfies CAFA's numerosity, minimum diversity, and amount in controversy requirements.  *See* 28 U.S.C. §§ 1332(d)(2)(A), (d)(5)(B).  Accordingly, Plaintiffs' request for remand is solely based on 28 U.S.C. § 1332(d)(9)(B)—CAFA's internal affairs provision.

### A.    Legal Standard

Federal courts have subject matter jurisdiction only as authorized by the Constitution and Congress, U.S. Const. art. III, § 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  CAFA vests original jurisdiction in district courts to hear class actions in which the aggregated amount in controversy exceeds $5,000,000; any member of a class of plaintiffs is a citizen of a State different from any defendant; and the number of members of the plaintiff class is 100 or more. 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B); *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1220 (9th Cir. 2020).

However, even if each of these requirements is satisfied, district courts lack jurisdiction if the action solely "relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized."  28 U.S.C. § 1332(d)(9)(B).  This same provision appears in the statute governing CAFA removal.  *See* 28 U.S.C. § 1453(d)(2).

As Congress enacted CAFA to facilitate adjudication of certain class actions in federal court, there is no anti-removal presumption attending cases invoking CAFA. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

**B.    Burden**

The parties disagree as to which party maintains the burden to establish the applicability of the internal affairs provision.  (*See* MTR 8; Opp'n MTR 12–13, ECF No. 29.)  In the Ninth Circuit, the removing party bears the initial burden to show that all of the prerequisites of CAFA jurisdiction are present, but then the burden shifts to the party seeking remand to show that one of CAFA's exceptions applies.   *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020–24 (9th Cir. 2007) (emphasis added).   The Ninth Circuit has not determined whether the internal affairs provision is a "prerequisite" to CAFA jurisdiction or one of its "exceptions."

However, to resolve this dispute, district courts are not without guidance. Exceptions to CAFA, such as the "local controversy" and "home-state controversy" provisions, are those that require courts to decline the exercise of otherwise valid jurisdiction.  *Id.* at 1022.  It is "those provisions in § 1332 that instruct the court to 'decline' jurisdiction that make something an exception rather than a prerequisite." *Becher v. Nw. Mut. Life Ins. Co.*, No. 10-cv-6264-PSG (AGRx), 2010 WL 5138910, at *3 (C.D. Cal. Dec. 9, 2010) (*citing Serrano*, 478 F.3d at 1022).  "In fact, both the 'local controversy' and 'home-state controversy' exceptions include the language 'decline to exercise jurisdiction,' whereas 'prerequisites' are marked by affirmative grants of jurisdiction ('shall have jurisdiction') or affirmative rejections of jurisdiction ('shall not apply')."   *Id.*   In other words, subsections to § 1332 stating that jurisdiction-creating paragraphs "shall not apply" to certain class actions are prerequisites, not exceptions.  *Serrano*, 478 F.3d at 1020 n.3.

Accordingly, drawing from the Ninth Circuit's analysis in *Serrano*, other courts in this district have determined that the language preceding the internal affairs provision dictates that it should be considered a prerequisite.  *See Becher*, 2010 WL

5138910, at *3; *Evergreen Cap. Mgmt. LLC v. Bank of New York Mellon Tr. Co., N.A.*, No. 20-cv-7561-MWF (AGRx), 2020 WL 6161509, at *4 (C.D. Cal. Oct. 20, 2020).  Considering that the words "shall not apply" preface 28 U.S.C. § 1132(d)(9), these courts "construe[] § 1332(d)(9)(B) as a prerequisite—not an exception—to a federal court's exercise of CAFA jurisdiction that the removing party has burden of negating."  *Becher*, 2010 WL 5138910, at *3 (*citing Madden v. Cowen & Co.*, 576 F.3d 957, 975 (9th Cir. 2009) (holding that similar provision in the Securities Litigation Uniform Standards Act of 1998 is a "prerequisite" rather than an "exception" to federal jurisdiction)).  The Court finds this reasoning persuasive.

Defendants argue that courts in other circuits place the burden of establishing the applicability of the internal affairs provision on the party seeking remand.  (Opp'n MTR 12–13 (*citing Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 26 (2d Cir. 2010); *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 335–36 (4th Cir. 2019); *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 618–19 (7th Cir. 2012)).)  That approach, however, is not the rule in this Circuit.

The Court therefore holds that the Defendants bear the burden of showing by a preponderance of the evidence that the internal affairs provision, as a prerequisite to CAFA jurisdiction, does not apply in this case.  Nevertheless, this determination is not consequential to the resolution of this motion, and the Court's ruling would be the same regardless of which party carries the burden.

## C.   Internal Affairs or Governance

First, for the internal affairs provision to apply, the action must solely "relate[] to the internal affairs or governance of a corporation or other form of business enterprise . . . ."  28 U.S.C. § 1332(d)(9)(B).  In other words, each claim advanced in the class action must concern a business enterprise's "internal affairs or governance." Accordingly, this Court is tasked with determining whether Plaintiffs' claim for breach of fiduciary duty relates to the internal affairs or governance of the Exchanges.

Although Congress did not supply a definition of "internal affairs," CAFA's legislative history indicates that the term should be understood in the same manner as the Supreme Court's definition in *Edgar v. MITE Corp.*, 457 U.S. 624 (1982).  *See* S. Rep. No. 109-14, at 45 (2005).  There, the Court held that issues of internal affairs address "matters peculiar to the relationship among or between the corporation and its current officers, directors, and shareholders." *Edgar*, 457 U.S. at 645.  "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs . . . because otherwise a corporation could be faced with conflicting demands." *Id.* (*citing* Restatement (Second) of Conflict of Laws § 302).

As a preliminary matter, although the reciprocal insurance exchanges are not incorporated, as unincorporated associations under California law, the Exchanges qualify as "other form[s] of business enterprise[s]" for the purposes of CAFA. *See In re Textainer P'ship Secs. Litig.*, No. C 05-0969 MMC, 2005 WL 1791559 (N.D. Cal. July 27, 2005) ("The phrase 'other form of business enterprise' is 'intended to include forms of business entities other than corporations.'" (*quoting* S. Rep. 1909-14 at 45)).

At the core of Plaintiffs' allegations is that Defendants managed the Exchanges to benefit themselves at the expense of the subscribers, in violation of the fiduciary duties imposed by California law.  Plaintiffs allege that Defendants mismanaged the Exchanges by "siphoning nearly all the excess premium out of the subscribers' Exchanges and funneling it to FGI's parent company" and subsequently failing to properly disclose this conduct to the subscribers, to the benefit of the Defendants' self-serving interests.  (Compl. ¶ 15.)  In the Complaint's claim for relief for breach of fiduciary duty—the only cause of action alleged in the Complaint—Plaintiffs assert that each Defendant breached its fiduciary duties of care and loyalty by:

> a. Taking excessive compensation, which allowed them to improperly extract billions of dollars from the Plaintiffs' and subscribers' paid-in premiums;

b. Using criteria that were not disclosed to or approved by Plaintiffs and subscribers to award themselves excessive compensation;

c. Abusing their powers as attorneys-in-fact to gain an unfair advantage and excessive compensation for themselves at the expense of Plaintiffs and subscribers;

d. Failing to provide Plaintiffs and subscribers with information about the management fees collected, including the total profits earned and the compensation received with a 100% profit margin baked in;

e. Taking actions to increase the subscriber base and premium base when there was no need or benefit to the subscribers;

f. Running their Exchange to benefit FGI or Zurich and its shareholders, instead of the owners of the Exchange, the subscribers;

g. Failing to disclose their conflicting fiduciary obligations owed to Zurich and its shareholders and not putting in place safeguards to protect subscribers from Zurich's influence on the amount of management fees collected; and

h. Collecting excessive management fees that wasted the premiums paid by Plaintiffs and subscribers.

(*Id.* ¶ 163.)   The Court sees no reasonable method of resolving any of Plaintiffs' claims without determining whether Defendants, in their management of the Exchanges, wrongfully transferred excess capital to themselves and thereby failed to return a reasonable portion of the surplus to the subscribers.  In other words, resolving Plaintiffs' claims necessarily involves evaluating the business judgment that the Defendants exercised in the execution of the managerial duties imposed by their roles as the Exchanges' attorneys-in-fact.

To support its conclusion that this Court has jurisdiction over this case, Defendants argue that Plaintiffs' claims do not relate to the Exchanges' internal affairs or governance because Defendants are legally distinct entities.  (Opp'n MTR 14.)  In its argument, Defendants contend that because FGI, TUA, and FUA are entities legally distinct from the Exchanges, "Plaintiff's claims are more akin to 'claims against outside auditors.'"   (*Id.* (*quoting Tuttle v. Sky Bell Asset Mgmt., LLC*, No. C 10-03588 WHA, 2011 WL 208060, at *5 (N.D. Cal. Jan. 21, 2011).)  However, Defendants' reliance on *Tuttle*, a case from the Northern District, is misplaced for

several reasons.  First, in *Tuttle*, the court found that § 1332(d)(9)(B) did not apply because the plaintiffs' five causes of action, which included a claim for negligence, were broader than "only one" claim for breach of fiduciary duty.  *Id.* at *6.  Second, the plaintiffs brought claims against twenty-five named defendants, including seven limited partnerships, their general partners, offices, and auditors.  *Id.* at *1.  Neither fact is true in this case.  Here, Plaintiffs bring only one claim for breach of fiduciary duty against the attorney-in-fact Defendants.   Further, the analogy between Defendants' role with respect to the Exchanges and that of an "outside auditor" is inapposite.  Outside auditors do not manage the businesses they audit, and they do not serve as agents or attorneys-in-fact.  They certainly do not, as Defendants have here, determine whether excess capital should be returned to the business's owners.  As such, Defendants' role as an agent and attorney-in-fact is materially distinguishable, and only because the Defendants are legally distinct from the Exchanges does not necessarily dictate that they are not involved in the Exchanges' internal affairs.

Rather, another Northern District case is more analogous to the facts in this case.  There, the plaintiff, a holder of limited partnership units, brought action for breach of fiduciary duty against the partnerships' general partner.  *In Re Textainer P'ship Secs. Litig.*, 2005 WL 1791559, at *1.  Specifically, the plaintiff contended that the general partner, in its management of the partnership, acted in a manner "fundamentally unfair" to the limited partners.  *Id.*   Considering that the plaintiff alleged fraudulent or negligent mismanagement of the corporation's affairs, the court concluded that the "plaintiff's breach of fiduciary duty claim relates solely to the 'internal affairs or governance'" of the partnership.  *Id.* at *5–6.  Applying the same standard here, Defendants, as attorneys-in-fact, serve as an intrinsic component of the Exchanges' management.  Defendants perform managerial duties for the Exchanges, including the decision of how much excess capital should be paid to themselves and how much should be returned to the subscribers.  Plaintiffs' claims directly relate to whether Defendants breached their fiduciary duties while carrying out those duties.

Although Defendants are correct to assert that they do not serve as formal "officers" or "directors" of the Exchanges, their roles are more akin to that of an officer with operating decision-making authority than that of an outside auditor or secretarial service.

Finally, Defendants argue that Plaintiffs' claims do not solely relate to the Exchanges' internal affairs or governance because they arise from contract, not corporate law. (Opp'n MTR 17–19.) According to Defendants, "Plaintiffs' claims are not about *how* Defendants perform their functions, but rather the *amount* Defendants collected to serve as Plaintiffs' attorneys-in-fact—compensation authorized by contracts between the parties." (*Id.* at 17 (emphasis in original).)   However, Defendants' characterization is not an entirely accurate representation of Plaintiffs' claims.  Plaintiffs' claims relate to whether Defendants acted in accordance with the fiduciary duties imposed upon the attorneys-in-fact when dealing with the Exchanges' surplus and whether they properly disclosed necessary facts to the subscribers. Defendants' relationship with the Exchanges is not only contractual but is also fiduciary.   The fiduciary duties that Plaintiffs allege Defendants breached do not solely stem from the contracts between the parties, but rather arise out of agency law. The Plaintiffs claim that Defendants breached their fiduciary duty, not the subscription agreement, and the existence of a contract does not preclude a claim for breach of fiduciary duty that is related to a business's internal affairs.

Therefore, the Court concludes that Plaintiffs' claim of fiduciary duty "relates to the internal affairs or governance" of the Exchanges.

**D.   Arising Under or by Virtue of the Laws of The State in which Such Business Enterprise is Incorporated or Organized**

Next, the internal affairs provision requires that the plaintiff's claims "arise[] under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized."  28 U.S.C. § 1332(d)(9)(B).  It is clear to the

Court that the statute refers to the "business enterprise" evaluated in the first half of the subparagraph, which in this case is the Exchanges.

Applying the above standard in this case, each Exchange is organized under or by virtue of the laws of California. (*See* Decl. Charles Crueger ISO MTR ("Crueger Decl.") Exs. 1–3, ECF Nos. 25-1–25-3.) Further, Plaintiffs' claim for breach of fiduciary duty arises out of California law. (*See generally* Compl.) California law provides the relevant standard for the fiduciary duties that Defendants owe to the Exchanges' subscribers. *See State Farm Mut. Auto. Ins. Co. v. Superior Ct.*, 114 Cal. App. 4th 434, 442 (2003).

Therefore, the Court finds that this case falls within the scope of § 1332(d)(9)(B) and belongs in state court.

## IV.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiffs' Motion to Remand, (ECF No. 24), and **REMANDS** the case to the Superior Court of the State of California for the County of Los Angeles, Case No. 23STCV07597.  Further, having found that the Court lacks jurisdiction over this case, Defendants' Motion to Dismiss, (ECF No. 41), is **DENIED AS MOOT**.


**IT IS SO ORDERED.**


November 13, 2023

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**